No. 4047

Second Circuit

ABBOTT v. DUNCAN

(July 14, 1931. Opinion and Decree.)
(October 1, 1931. Rehearing Refused.)
(November 3, 1931. Writ of Certiorari and Review Refused by Supreme Court.)

Hawthorn, Stafford & Pitts, of Alexandria, attorneys for plaintiff, appellee.

George J. Ginsberg, of Alexandria, attorney for defendant, appellant.

DREW, J. Plaintiff sued for $1731.20, alleged to be due as accrued salary for services performed for defendant as an architectural draftsman. Defendant is an architect in Alexandria, Louisiana; and the period of employment for which salary is alleged to be due is from November 26, 1928, to April 3, 1930. The only difference between plaintiff and defendant is the amount of plaintiff's weekly salary during this period.

Plaintiff, previous to the time for which he is suing for salary, had worked for defendant in the same capacity at a salary of $50 per week. In the early fall of 1928, plaintiff left defendant's employ, either of his own accord or because of a falling off in defendant's business, and went to Florida where he remained for one or two months. While there, he wrote defendant expressing a desire to come back to work for him, to which letter defendant replied, offering him a position at $25 per week, until such time as business was better, when his salary would be raised. Plaintiff returned and began work at $25 per week on November 26, 1928, and continued in defendant's employ until April 3, 1930. Plaintiff contends that at the end of the second week of his employment his salary was raised to $50 per week, and continued at that salary until August 3, 1929, at which time, due to the falling off in business, defendant cut the salaries of all his employees—plaintiff's salary being reduced to $40 per week—and that he continued to work for $40 per week until his employment ceased on April 3, 1930.

It is admitted that during the period of plaintiff's employment he received from defendant the total sum of $1,492.50. Other than the salary claimed, plaintiff claims $64.70, growing out of a loan transaction wherein plaintiff borrowed some money from a loan company and gave to defendant the sum of $45.65. Defendant agreed to pay all expenses of the loan, which amounted to $19.05. There is very little dispute over this item and on trial it developed that defendant had made the last payment of $13 to the loan company, thereby reducing his indebtedness to plaintiff for this item from $64.70 to $51.70, the correct amount as allowed by the lower court. Plaintiff borrowed this money at the suggestion of defendant, due to defendant not being financially able at the time to pay to plaintiff moneys he then owed him.

Plaintiff swears positively to the increase in salary; that at the end of the second week, defendant's wife, in the presence of her husband, told him that his old salary of $50 per week had again been put into effect as of that week. He offers in corroboration the testimony of a fellow-employee, Mr. Foster, who testified that at the time the salaries of the force were cut, defendant, in notifying him that his salary would be reduced from $43 per week to $40 per week, told him that he was also reducing plaintiff's salary to $40 per week. He further offered the testimony of another employee who was engaged after plaintiff had begun work, who testified that his salary was $38 per week and that he was given to understand that he was receiving less salary than the other members of the force. Another corroborating fact is that from November 26, 1928, until April 6, 1929—a period of nineteen weeks—at the very beginning of plaintiff's employment, he was paid $576, exactly $101 more than he should have received at a salary of $25 per week. This is very strong corroboration, due to the fact that the evidence clearly shows that defendant did not keep any of his help paid up. He was delinquent in paying full salary to nearly all of his employees.

Defendant and his wife, who was book-keeper, stenographer, and you might say, office manager, both positively deny that any increase was ever made in plaintiff's salary; that he began work at $25 per week and continued to work at that salary until his employment ended. They say that the business in 1927 amounted to more than $30,000; in 1928, about $23,-000; and in 1929, less than $10,000. This last testimony is offered to show that instead of the business increasing, there was a constant falling off in business. The record, however, discloses that the amount of money taken in by an architect does not necessarily mean that the work in the office has fallen off. In dull times, there is a big effort made to promote jobs which require much labor and time in preparing plans, specifications, etc., and it is shown that in promotion work about one job out of a hundred ever materializes. It can be readily seen that the evidence is very conflicting.

The judge of the lower court found for plaintiff. It is a case involving purely and simply a question of fact and the veracity of the witnesses would necessarily play a big part in determining the true facts in the case. The judge of the lower court was better qualified to pass on the veracity of the witnesses than we are. It is truly a case where the principle of law so often announced by this court must be invoked—that is, that the finding of the lower court on a question of fact, unless manifestly erroneous, will not be disturbed. In this case, we cannot say that the finding of the lower court was manifestly erroneous; therefore, the judgment must be affirmed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.